UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Goldie C.,[1]

        Plaintiff,         Court File No.  21-cv-402 (JRT/LIB)

v.         **REPORT & RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

      Plaintiff, Goldie C., (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") terminating her disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions. [Docket Nos. 26, 28]. For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 26], be **GRANTED**, and Defendant's Motion for Summary Judgment, [Docket No. 28], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

I. **Procedural History**

On March 2, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 150).[2] On September 23, 2011, Defendant found that Plaintiff was disabled due to Osteoarthritis, Myofascial Pain Syndrome, Asthma, Borderline Intellectual Functioning, Attention Deficit Hyperactivity Disorder, a Depressive Syndrome, and a Generalized Anxiety Disorder. (Tr. 144). Defendant found that Plaintiff had been disabled since June 24, 2010. (Tr. 150). Although Plaintiff was awarded disability benefits, Defendant noted that "[m]edical improvement [was] expected with appropriate treatment," and, as such, Plaintiff was recommended to undergo a continuing disability review ("CDR") in 24 months. (Tr. 150)

The record before the Court shows that, on July 31, 2017, after a routine review of Plaintiff's disability pursuant to 20 C.F.R. § 416.994a(a), Defendant concluded that due to medical improvement, Plaintiff was no longer disabled as of July 1, 2017. (Tr. 182). Accordingly, Defendant terminated Plaintiff's disability benefits. (Tr. 195).

Plaintiff requested reconsideration of the cessation decision, and on February 9, 2018, Disability Hearing Officer Deborah Keplar concluded that there had been medical improvement in Plaintiff's condition since the September 23, 2011, decision (hereinafter referred to as the Comparison Point Decision, or the "CPD"),[3] and that Plaintiff was no longer disabled. (Tr. 220-234).

Plaintiff next requested a hearing before an administrative law judge ("ALJ"), and ALJ Corinne McLaughlin held an administrative hearing on October 10, 2018. (Tr. 182). At the

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 21], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 136 exhibits. (See Administrative Record [Docket No. 21). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.
[3] The "Comparison Point Decision," or "CPD," is the most recent medical determination that Plaintiff was disabled. (See Tr. 95); see also 20 C.F.R. § 416.994a(a)(1).

2

hearing, the ALJ heard testimony from Plaintiff, independent medical expert, Michael A. Lace, PsyD, as well as, an independent vocational expert, Wayne Onken. (Tr. 182). On December 26, 2018, the ALJ issued her decision, in which she concluded that Plaintiff's disability ended as of July 1, 2017. (Tr. 196).

Plaintiff requested review of the December 26, 2018, decision by the Appeals Council. (Tr. 207). On February 10, 2020, the Appeals Council remanded Plaintiff's case back to the ALJ for further proceedings, instructing the ALJ to adjudicate Plaintiff's claim through the December 26, 2018, decision, and to further evaluate Plaintiff's mental impairments. (Tr. 207).

Pursuant to the decision of the Appeals Council, the ALJ conducted a second administrative hearing on June 3, 2020, at which Plaintiff and independent vocational expert Timothy N. Tansey ("IVE Tansey") testified. (Tr. 93). On June 26, 2020, the ALJ issued a second decision in which she concluded that Plaintiff's disability ended as of July 1, 2017, and she had not been disabled since the date of that decision. (Tr. 110).

Plaintiff again sought review of the June 26, 2020, decision by the Appeals Council. (Tr. 79). The Appeals Council denied Plaintiff's request for review. (Tr. 84-89). As such, the ALJ's June 26, 2020, decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481. On February 11, 2021, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 26, 28].

## II. Standards of Review

### A. Sequential Analysis

Once an individual becomes entitled to disability benefits, her continued entitlement to benefits may be reviewed periodically. 20 C.F.R. § 404.1594; see also 42 U.S.C. § 423(f)(1). To

determine whether a claimant's disability has continued and whether she is entitled to continued benefits, a Continuing Disability Review ("CDR") is initiated by the Commissioner. See 20 C.F.R. § 404.1589. If the Commissioner ceases disability benefits because she determined that a claimant's disability has ceased since the CPD and the claimant has regained the ability to work, the claimant may request reconsideration by the Commissioner of the decision. 20 C.F.R. §§ 404.907-404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine upon continuing review whether a claimant's disability has ceased, the ALJ must follow an eight-step sequential analysis. The ALJ must determine:

> (1) whether the claimant is currently engaging in substantial gainful activity; (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment; (3) whether there has been a medical improvement; (4) if there has been a medical improvement, whether it is related to the claimant's ability to work; (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies; (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe; (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of [her] past relevant work activity; and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

See 20 C.F.R. § 404.1594(f).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967-404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is the final determination of the

Commissioner and binding upon the claimant, unless the matter is appealed to Federal Court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In this case, the Appeals Council declined to review the ALJ's June 26, 2020, decision finding that Plaintiff was no longer disabled. (Tr. 1-6).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the eight steps. However, judicial review of the Commissioner's decision to cease disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to also support an opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

A claimant has a continuing burden to demonstrate that she remains disabled, and the court cannot draw any inference from the fact that benefits were previously granted. Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991). "Once the claimant meets this initial responsibility . . . the burden shifts to the Secretary to demonstrate that the claimant is not disabled." Id. (reference omitted). "If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work." Id. (referencing 20 C.F.R. § 404.1594(b)(2)–(5)).

"Medical improvement is defined as a decrease in the medical severity of the impairments present at the time of the most recent favorable medical condition." Id. at 1315-16 (referencing 20 C.F.R. § 404.1594(b)(1)). "This 'medical improvement' standard requires the Commissioner

6

to compare a claimant's current condition with the condition existing at the time she was found disabled and awarded benefits." Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2008). Medical "[i]mprovement is measured from 'the most recent favorable decision' that the claimant was disabled." Id. at 946 (citing 20 C.F.R. § 416.994(b)(1)(i)). As already noted, supra, the favorable decision is commonly referred to as the Comparison Point Decision ("CPD"). Here, the CPD was the September 23, 2011, decision awarding Plaintiff benefits. (Tr. 138-150).

"The decision concerning whether . . . [a claimant's] condition has improved is primarily a factual inquiry, which so often depends upon the credibility to be given to the various witnesses, a responsibility particularly given to the trier of fact." Nelson, 946 F.2d at 1316 (reference omitted). "As a result, if substantial evidence supports the [Commissioner's] position[,] then it must be upheld." Id.

### III. Decision Under Review

The ALJ made the following determinations during the eight-step disability evaluation process. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity ("SGA") through December 2018, but that she had engaged in SGA from January 2019 through December 2019. (Tr. 95). Plaintiff challenges the ALJ's findings at step one only with respect to the finding that she had engaged in SGA in 2019.

At step two, the ALJ first found that, at the time of the CPD, Plaintiff had the following medically determinable impairments: osteoarthritis, degenerative disk disease, hip bursitis, myofascial pain syndrome with migraine headaches, asthma, borderline intellectual functioning, attention deficit hyperactivity disorder, bipolar disorder (previously diagnosed as depressive disorder), generalized anxiety disorder, obesity, left tonic pupil/anisocoria, carpal tunnel syndrome and cubital tunnel syndrome. (Tr. 96).

The ALJ next concluded that, since July 1, 2017, and as of the date of that decision, none of Plaintiff's impairments, or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Specifically, the ALJ found that none of Plaintiff's impairment or combination of impairments met or medically equaled listings 1.02, 1.04, 2.02, 3.03, 11.02, 11.14, 12.04, 12.06, or 12.11. (Tr. 97-98). Plaintiff does not challenge these findings.

At step three, the ALJ determined that medical improvement had occurred as of July 1, 2017. (Tr. 99). Specifically, the ALJ wrote:

> The medical evidence supports a finding that, as of July 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD . . . As discussed below, the overall evidence supports a less restrictive residual functional capacity, as improvement is documented in clinical findings and the pattern of limited treatment.

(Tr. 99). The ALJ found further that, at the time of the CPD, Plaintiff was found to have the following RFC:

> [T]he claimant had the residual functional capacity to perform a modified range of light exertion work, except that she could never climb stairs, ropes or scaffolds, could occasionally climb ramps and stairs, occasionally balanced a narrow, slippery or erratically moving surfaces as defined in the SCO/DOT, could occasionally stoop, kneel, crouch and crawl, could not work in extreme cold, around dangerous moving machinery or at unprotected heights, is limited to occasional interaction with supervisors, coworkers and the general public, is limited to simple, routine, instructions and tasks, and occasional changes in the work setting and tasks.

(Tr. 100). Plaintiff does not challenge the finding at step three.

At step four, the ALJ determined that the medical improvement was related to Plaintiff's ability to work because it had improved and increased her RFC. (Tr. 104). Plaintiff does not challenge this finding. Because the medical improvement was related to Plaintiff's ability to work, the ALJ did not analyze step five and proceeded to step six. See 20 C.F.R. § 404.1594(f).

At step six, the ALJ concluded that Plaintiff continued to have a severe impairment or combination of impairments. (Tr. 104). Based on Plaintiff's impairments since July 1, 2017, through the date of this decision, the ALJ then made the following revised RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, and scaffolds, could occasionally climb ramps and stairs, occasionally balance on narrow, slippery, or erratically moving surfaces as defined in the SCO/DOT, occasionally stoop, kneel, crouch, and crawl. She should not work at extreme cold; with dangerous, moving machinery; or at unprotected heights. She could have occasional interaction with supervisors, coworkers, and the general public. She could understand, remember, and carry out simple, routine instructions and tasks. She could have occasional changes in the work setting and tasks. She could frequently handle on the right, but should not be required to perform forceful gripping or torqueing.

(Tr. 104).

In making this updated RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably been expected to produce the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the residual functional capacity assessment for the reasons below." (Tr. 106). Plaintiff challenges this credibility finding by the ALJ.

At step seven, the ALJ determined that, since July 1, 2017, Plaintiff was unable to perform past relevant work. (Tr. 108). Plaintiff does not challenge this finding.

Finally, at step eight, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and revised residual functional capacity based on the impairments present as of July 1, 2017, the [Plaintiff] was able to perform a significant number of jobs in the national economy." (Tr. 109). Relying upon testimony from independent vocational expert Timothy N. Tansey, ("IVE Tansey"), the ALJ specifically found that, as of July 1, 2017, among the

representative occupations, Plaintiff would now be able to perform the requirements of mail clerk (Dictionary of Occupational Titles No. 209.687-026) of which there are 50,000 positions in the national economy; assembler (Dictionary of Occupational Titles No. 706.687-010) of which there are 100,000 positions in the national economy, after reduction due to manipulative limitations; routing clerk (Dictionary of Occupational Titles No. 222.687-022) of which there are 40,000 positions in the national economy; and housekeeping cleaner (Dictionary of Occupational Titles No. 323.687-014) of which there are 150,000 in the national economy. (Tr. 109). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step eight.

Accordingly, the ALJ found that, as of July 1, 2017, Plaintiff was no longer disabled. (Tr. 110).

## IV. Analysis

Plaintiff challenges the ALJ's decision on several grounds. This Court finds one of these arguments are sufficiently convincing to warrant remand: the ALJ erred in finding that Plaintiff engaged in substantial gainful activity ("SGA") from January 2019 through December 2019. (Plf.'s Mem., [Docket No. 27], at pp. 15-16). Specifically, Plaintiff takes issue with the ALJ concluding that Plaintiff's earnings in 2019 averaged $1231.78 per month, and therefore met the threshold for SGA. (Id.). Plaintiff asserts that the ALJ failed to reduce from her earnings a $100 Christmas bonus and prescription medication co-payments. (Id.).

As noted above, the first inquiry is to determine whether the applicant is engaged in SGA. SGA means work that—(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit. 20 C.F.R. § 404.1510. Earnings are the primary

10

criteria in establishing SGA. 20 C.F.R. §§ 404.1574(a)(1) and 416.974(a)(1); Social Security Ruling 83-33.

For the year 2019, an individual must have earned more than $1,220.00 per month for the work to be considered SGA. See 20 C.F.R. §§ 404.1571-75 (discussing how SGA is evaluated); see also Substantial Gainful Activity, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/oact/cola/sga.html (last visited August 3, 2022). However, only the amount that a claimant actually earned is considered in establishing whether that claimant is involved in SGA. 20 C.F.R. § 404.1574(a)(2). The applicable regulations provide that any "impairment related work expenses," defined as the reasonable costs of certain items and services required by an impaired individual which enable that individual to work, are subtracted in determining an applicant's monthly income. 20 C.F.R. § 404.1576(a).

Here, the ALJ's determination that Plaintiff was performing SGA in 2019 was based, in part, on Plaintiff's new hire, quarterly wage, and unemployment insurance records, or NDNH. (Tr. 95, 357-358, 369-372). Specifically, Plaintiff's NDNH for 2019 indicated that she received $4,233 in the first quarter; $3,280 in the second quarter; $3,975 in the third quarter; and $3,294 in the fourth quarter, for total earnings of $14,781.39 in 2019. (See Tr. 95, 369-372, 375). As the ALJ noted, $14,781.39 divided by twelve months resulted in Plaintiff earning an average of $1231.78 per month in 2019—approximately $11.79 per month more than the SGA threshold. (Tr. 95). At the June 3, 2020, administrative hearing, Plaintiff testified that, in 2019, she was taking 40 mgs of oxycontin three times a day and 10 mgs of oxycodone six times a day for pain. (Tr. 73). Plaintiff further testified that she paid the co-payments ("co-pays") for her medications, which were "different for each one," but were "[u]sually a couple of dollars. Towards the end of the year, [they

were] nothing." (Tr. 73). Plaintiff also testified that, without the medications, she would be unable to work. (Tr. 73).

The ALJ considered this testimony and found that, "even deducting these expenses, however, [Plaintiff's] earnings exceed[ed] the presumed [SGA] of $1,220/month for 2019." (Tr. 95). The ALJ went on to further evaluate Plaintiff's SGA in 2019, noting that, while Plaintiff testified to receiving special accommodations at work "of not lift[ing] anything," there was no evidence of such accommodations, nor was there evidence that her work was valued less than what she was paid. (Tr. 95). The ALJ further noted that, because Plaintiff's work activity exceeded six months, her work activity could not be considered an unsuccessful work attempt. (Tr. 95). The ALJ also explained that, while she could not consider whether 2019 work activity included a trial work period (since this had been previously exhausted by Plaintiff), Plaintiff was nevertheless no longer disabled prior to this work activity. (Tr. 95-96). Based on this evidence, among other things, the ALJ concluded that Plaintiff had been engaged in SGA in 2019. (Tr. 95-96).

Plaintiff first contends that the ALJ should have deducted from her average earnings a $100 Christmas bonus she received from work in 2019, asserting that this was income unrelated to her productivity. (Plf.'s Mem., [Docket No. 27], at p. 16). At the June 3, 2020, administrative hearing, the ALJ explicitly asked Plaintiff whether she received a Christmas bonus in 2019, to which Plaintiff responded, "Yes." (Tr. 74). Plaintiff further testified that the bonus was in the amount of $100 and that "[i]t was extra money." (Tr. 74). However, the ALJ did not address Plaintiff's Christmas bonus in her decision. It is unclear to the Court whether the ALJ determined that the bonus was directly tied to Plaintiff's productivity at work (or not), and therefore, whether it was being deducted (or not) when evaluating Plaintiff's SGA. See 20 C.F.R. § 404.1574(a)(2). Without a specific discussion, the Court is unable to meaningfully review this portion of the ALJ's

12

decision. See Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis to remand.") .

The Court would be inclined to find this error harmless due to the fact that merely reducing Plaintiff's 2019 annual earnings of $14,781.39 by $100 would still place Plaintiff's average monthly earnings for 2019 ($1,223.45) beyond the 2019 SGA threshold ($1,220). However, Plaintiff also contends that her monthly earnings should have been reduced by $4.00 each month based on her testimony that "[s]he estimated her co-pays as 'a couple of dollars' for each medication." (Plf.'s Mem., [Docket No. 27], at p. 16). As noted above, payments for medications are considered "impairment related work expenses," which should be subtracted in determining a claimant's monthly income. 20 C.F.R. § 404.1576(c)(iv)(5) ("If you must use drugs or medical services (including diagnostic procedures) to control your impairment(s) the payments you make for them may be deducted. The drugs or services must be prescribed (or utilized) to reduce or eliminate symptoms of your impairment(s) or to slow down its progression.").

Here, the ALJ did specifically discuss Plaintiff's monthly prescription co-pays, but she found that, "even deducting these expenses, however, [Plaintiff's] earnings exceed[ed] the presumed [SGA] of $1,220/month for 2019." (Tr. 95). However, the Court cannot discern from this explanation the amount of money the ALJ was allocating towards Plaintiff's monthly prescription co-pays to determine to what extent Plaintiff's SGA exceeded the 2019 threshold of $1,220. In other words, while the ALJ indicated that Plaintiff's SGA exceeded the 2019 threshold despite deducting "a couple of dollars" in monthly prescription co-pays, the ALJ failed to

13

specifically provide how much she was calculating these expenses at—were the monthly prescription co-pays being calculated at $2 per month, $3 per month, or something else? The Court is not necessarily crediting Plaintiff's assertion that she paid $4.00 a month for her prescription medications, but without an additional explanation by the ALJ, it is unclear to the Court what the ALJ calculated Plaintiff's monthly prescription co-pay amounts at, and whether, based on that calculation, Plaintiff's average earnings did in fact exceed the 2019 SGA threshold of $1,220 per month.

Therefore, the Court finds that the ALJ's failure in discussing Plaintiff's Christmas bonus, combined with the ALJ's incomplete analysis of Plaintiff's monthly prescription medication expenses, constitutes reversible error. See Willcockson v. Astrue, 540 F.3d 878, 879-80 (8th Cir. 2008) (finding that while errors and uncertainties in opinion might not individually warrant remand, combination created doubt about ALJ's rationale and required remand). Remand is required for the ALJ to address Plaintiff's $100 Christmas bonus and further address her prescription medication expenses when evaluating Plaintiff's SGA for 2019.[4]

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 26], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 28], be **DENIED**; and

---

[4] Because the Court finds remand appropriate based on Plaintiff's SGA related argument, the Court does not address Plaintiff's other arguments in support of remand. The Court notes, however, that the reevaluation of Plaintiff's 2019 SGA will necessarily require consideration of each of the subsequent steps in the sequential analysis. This subsequent reconsideration is required because the ALJ's finding that Plaintiff worked at levels in excess of substantial gainful activity influenced the remainder of the ALJ's decision. For example, the ALJ, throughout her decision, reasoned that many of her subsequent decisions were supported, at least in part, by Plaintiff having worked near or in excess of substantial gainful activity levels. (Tr. 103, 104, 106, 107).

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated: August 5, 2022

s/Leo I. Brisbois<br>
Hon. Leo I. Brisbois<br>
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).